UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YUNZHI GAO,

                Plaintiff,

           -v-

YONG YANG and EMPEROR AUTO, INC.,

                Defendants.

20-CV-7285 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff Yunzhi Gao sues Defendants Yong Yang and Emperor Auto, Inc. ("Emperor Auto") for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated under the Exchange Act, 17 C.F.R. § 240.10b-5. Gao also brings state law claims for breach of contract, fraud, breach of the covenant of good faith and fair dealing, veil-piercing and alter ego, breach of fiduciary duties, and for an accounting. (Dkt. No. 7 ("Am. Compl.").) Defendants move to dismiss the amended complaint for failure to state a claim. For the reasons that follow, Defendants' motion is granted.

**I.    Background**

    The following facts, presumed true for the purposes of this opinion, are taken from the operative complaint and "any statements or documents incorporated in it by reference." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021).

    Around November 2018, Yang, via multiple phone calls, solicited a $200,000 investment in Emperor Auto from Gao, a twenty-one-year-old college student at the time. (Am. Compl. ¶¶ 10–12.) Yang represented himself as the sole shareholder of Emperor Auto, and stated that he sought to sell 40% of his share. (Am. Compl. ¶ 14.) Yang told Gao that he was soliciting the investment to raise capital to pursue a distributorship with a supplier, and that the investment

1

would be used as "working capital" for Emperor Auto. (Am. Compl. ¶¶ 17, 20.) Yang further stated that the "additional capital" would "facilitate" the "pursuit" of the distributorship. (Am. Compl. ¶ 17.) Finally, Yang promised Gao that his investment "would be used exclusively as the [c]orporation's working capital." (Am. Compl. ¶ 20.)

In December 2018, Gao entered into a share purchase agreement, buying a forty-percent stake in Emperor Auto for $200,000. (Am. Compl. ¶ 23.) Yang continued to own a sixty-percent stake and remained the sole corporate officer. (Am. Compl. ¶¶ 26–27.) One month after the execution of the purchase agreement, Yang had spent the entire investment, with a significant portion having been spent on a luxury car and other personal expenses, including a trip to Disney World, and with no portion having been spent on pursuing a distributorship. (Am. Compl. ¶¶ 30–32.) Gao spoke with Mr. Liu, who sold the luxury car to Yang and who expressed some surprise at Yang's ability to purchase the vehicle. (Am. Compl. ¶ 35.) Gao then contacted Mr. Ma, the owner of the supplier with which Emperor Auto was to pursue a distributorship, who informed Gao that "Defendant Yang and the Corporation had never pursued any distributorship with [Mr. Ma's] company." (Am. Compl. ¶¶ 41–43.) Finally, Gao "confronted Defendant Yang regarding his failure to pursue" the distributorship with Mr. Ma's supplier, to which Yang replied that he would "spend the money in whatever ways [he] see[s] fit." (Am. Compl. ¶ 44.)

In an opinion and order dated August 4, 2021, this Court dismissed Gao's initial complaint but granted leave to replead. (Dkt. No. 16.) Gao filed the Amended Complaint on August 25, 2021. (*See* Am. Compl.)

**II.     Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," such that a plaintiff's claims cross "the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007). This standard "demands more than an unadorned . . . accusation" or a "formulaic recitation of the elements of a cause of action," and instead demands that a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). For securities fraud claims, "heightened pleading requirements" apply. *ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). A plaintiff must "specify the statements that the plaintiff contends were fraudulent," as well as "identify the speaker," describe "where and when the statements were made," and "explain why the statements were fraudulent." *Id.* (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

A securities fraud plaintiff must satisfy "two layers of heightened pleading requirements," first under Federal Rule of Civil Procedure 9(b), and then under the Private Securities Litigation Reform Act ("PSLRA"). *Harris v. Amtrust Fin. Servs.*, 649 Fed. Appx. 7, 8 (2d Cir. 2016). A plaintiff must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Specifically, Rule 9(b) requires a plaintiff to "allege the who, what, where, and when of the alleged fraud" with particularity. *See Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Moreover, while Rule 9(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind" to be "alleged generally," a securities fraud plaintiff must nonetheless satisfy the PSLRA requirement that "the complaint . . . specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also Novak*, 216 F.3d at 306. Scienter is not adequately pleaded when the "allegedly fraudulent statements are presented as generic paraphrases." *Krstevski v. Welsh*, No. 1:16-CV-15

3

TS, 2016 WL 4532095, at *16 (D. Utah Aug. 29, 2016); *see Center Sav. & Loan Ass'n v. Prudential-Bache Secur., Inc.*, 678 F. Supp. 274, 278 (S.D.N.Y. 1987) ("[P]laintiffs are [not] relieved of their burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.") (quoting *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)). Similarly, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2)(A). For an inference of scienter to qualify as a "'strong inference,'" a complaint must allege "'facts from which, if true, a reasonable person could infer that the defendant acted with the required intent.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). An inference of scienter is "strong" only when a "reasonable person . . . deem[s] it cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged." *Set Capital v. Credit Suisse Grp.*, 996 F.3d 64, 78 (2d Cir. 2021). Securities fraud plaintiffs, therefore, are "entitled to only the 'most plausible' of competing inferences." *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 317 (S.D.N.Y. 2006) (quoting *Miller v. Champion Enters.*, 145 F. Supp. 2d 871, 877 (E.D. Mich. 2001)). The fraudulent inference must be more plausible than the "primary nonfraudulent inference." *See Midwest Operating Eng'rs Pension Tr. Fund v. Alkermes Pub. Ltd. Co.*, No. 21-801-CV, 2021 WL 5782079, at *6 (2d Cir. Dec. 7, 2021).

      A plaintiff can plead facts from which a reasonable person could infer a defendant's intent either by "alleging facts that demonstrate both motive and opportunity to commit fraud" or by alleging facts that would "constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1130 (2d Cir. 1994); *Set Capital*, 996 F.3d at 78. Because it is "undisputed" that corporate officers have the "opportunity to commit fraud," the "motive and opportunity" test really reflects "intent to deceive, manipulate,

4

or defraud investors." *See Fishbaum v. Liz Claiborne, Inc.*, 189 F.3d 460 (2d Cir. 1999); *Westchester Teamster Pension Fund v. UBS AG*, 604 Fed. Appx. 5, 6 (2d Cir. 2015).

Generally, "the failure to carry out a promise made in connection with a securities transaction is . . . a breach of contract" that "does not constitute fraud unless, *when the promise was made*, the defendant secretly intended not to perform or knew that he could not perform." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). No strong inference of scienter exists when a "competing inference" that defendants decided to breach "only at a later time" is "stronger." *Belesis v. Waksal*, No. 15 Civ. 5048, 2017 WL 1390683, at *4 (S.D.N.Y. Apr. 18, 2017).

**III.    Discussion**

In his Amended Complaint, Gao alleges violations of Section 10(b) of the Exchange Act and Rule 10b-5 and brings state law claims for breach of contract, fraud, breach of the covenant of good faith and fair dealing, veil-piercing and alter ego, breach of fiduciary duties, and an accounting. Yang moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Gao has not met the requisite pleading standard in the securities fraud context.

Rule 10b-5, promulgated under Section 10(b) of the Exchange Act, prohibits "mak[ing] any untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . ." 17 C.F.R. § 240.10b-5. A plaintiff seeking relief under Rule 10b-5 must prove "(1) a material misrepresentation or mission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008) (citing *Dura Pharms., Inc. v. Broudo*, 554 U.S. 336, 341–42 (2005)).

Gao first attempts to plead scienter based on circumstantial evidence. He then attempts to plead that Yang had both the motive and opportunity to commit securities fraud, relying on a theory based on Gao's youth and lack of business experience. Gao fails to meet the heightened pleading standard in the securities fraud context for either theory.

With regard to Gao's attempt to plead scienter based on circumstantial evidence, two allegations compose the core of his Amended Complaint. Gao alleges that (1) Yang lied to him about his pursuit of a major distributorship with a supplier, and that (2) Yang lied to him in stating that Gao's investment would be used exclusively as working capital to facilitate the pursuit of the distributorship. (Am. Compl. ¶¶ 16–17.) Neither allegation, whether standing alone or read together, passes muster under the heightened pleading standard for securities fraud plaintiffs.

### A.   Pursuit of Distributorship Statement

Gao's allegation that Yang lied about a major distributorship does not address the "who, what, where, and when of the alleged fraud" because Gao's Amended Complaint only summarizes what Yang said to Gao, and it does not specify when Yang represented to Gao that he was pursuing a distributorship. (Am. Compl. ¶¶ 17–18); *Ackerman*, 172 F.3d at 469. Allegedly fraudulent statements may not be "presented as generic paraphrases." *Krstevski*, 2016 WL 4532095, at *16. But Gao merely alleges that "Yang told him" of a distributorship rather than recounting exactly what Yang said to him. (Am. Compl. ¶ 17.) Accordingly, the Amended Complaint does not sufficiently detail a claim.

Further, Gao does not detail when Yang told Gao that he was pursuing a distributorship. Absent that allegation, the Amended Complaint does not adequately exclude the "competing inference" that Yang only decided to breach "at a later time." *Belesis*, 2017 WL 1390683, at *11; *Dover*, 423 F. Supp. 2d at 317. A "failure to carry out a promise in connection with a

6

securities transaction . . . does not constitute fraud unless, *when the promise was made*, the defendant secretly intended not to perform . . . ." *Mills*, 12 F.3d at 1176.  Although the Amended Complaint does allege that Emperor Auto "was not pursuing any distributorship at the time" of the statement, that allegation is too vague to form the basis of a securities claim, and in any event, it is conclusory.  *See Twombly*, 550 U.S. at 570.  Here, the Amended Complaint's lack of detail regarding the "when of the alleged fraud" leaves a continuum of nonfraudulent inferences competing with the inference that Yang never had plans to pursue a distributorship.  He may have abandoned those plans seconds, hours, or weeks after making the statement.  In any case, such abandonment would not constitute securities fraud, so Gao has not stated a claim.

        **B.**     **Exclusive Use of Investment as Working Capital Statement**

Similarly, Gao's allegation that Yang lied to him regarding the exclusive use of Gao's investment as working capital to pursue the distributorship fails to adequately "explain why the statements were fraudulent," and fails to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *ATSI*, 493 F.3d at 99; § 78u-4(b)(2)(A).  In his Amended Complaint, Gao alleges that "Yang knew the statement he made to Plaintiff was false because he had no intention to use the [i]nvestment exclusively as . . . working capital of the [c]orporation," and that "[Yang] was using the [c]orporation's bank account as his personal piggy bank and used the [i]nvestment to pay for various personal items . . . ." (Am. Compl. ¶¶ 21–22.)  The only facts Gao alleges with particularity in support of his inference that Yang acted with scienter are derived from bank records reflecting Yang's purchase of plane tickets to, and a hotel stay in, Orlando, as well as tickets to Walt Disney World.  (Am. Compl. ¶¶ 50–51.)  Gao also alleges that Yang's bank records contain "several charges that are not readily identifiable . . . which coincided with the timing of the purchase of [a] luxury vehicle by Defendant Yang."  (Am. Compl. ¶ 52.)  These allegations, while specific, nonetheless do not

exclude a competing nonfraudulent inference. *See Midwest Operating Eng'rs.*, 2021 WL 5782079, at *6. Yang contends that he paid for a trip to Orlando to inspect and take courses on a static printing machine, and that while he spent $358.91 on Disney World tickets, those funds came out of his own contributions to the company. (Dkt. No. 22 at 6–7.) Yang also contends that he paid $150,050 to an auto parts supplier, although he does not directly address the unidentifiable charges. *Id.* Nevertheless, even taking all of the facts as alleged in Gao's Amended Complaint as true, Gao's allegations leave plenty of room for Yang's competing explanation that he was using corporate funds to purchase capital and for related expenses. Moreover, Gao's allegation that some of the charges in Yang's bank records "coincide" with his purchase of a luxury vehicle, an allegation he corroborated with a statement from Mr. Liu, is speculative at best, and therefore, absent any additional allegations, is hardly *more* plausible than a competing inference that Yang had spent corporate funds on capital purchases (Am. Compl. ¶¶ 34, 52); *see Dover*, 423 F. Supp. 2d at 317.

### C. Motive and Opportunity

Finally, Gao attempts to plead scienter by alleging that Yang had a motive and opportunity to commit fraud. *See Shields*, 25 F.3d at 1130. The closest Gao comes to pleading scienter is in alleging that "Yang preyed on [him] because of [his] lack of business experience and his young age." (Am. Compl. ¶ 40.) But Gao confuses the *fact* of his youth and inexperience with an *attribution* of motive. Even assuming, *arguendo*, that Gao's youth presents an opportunity, an opportunity alone does not suffice to plead scienter absent motive. *See Shields*, 25 F.3d at 1130. Facts that demonstrate motive must "entail concrete benefits that could be realized by one or more of the false statements . . . ." *Id.* Yet because Gao alleges that it was only the fact of his youth and inexperience that led Yang to prey on him, Gao does not demonstrate how Yang could have realized the "concrete benefit" of the investment through his

allegedly false statements, rather than through Gao's own inexperience, given that Yang's allegedly false statements concerned the distributorship, not any fact of Gao's age or business experience. *Id.* Even outside the context of securities fraud, Gao's allegation that "Yang preyed on [him]" does not survive *Twombly*'s instruction that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. Gao's allegation leads inevitably to a tautology, as it provides only the fact of Gao's age in support of his allegation that Yang took advantage of Gao because of his age. It is therefore entirely conclusory.

Gao's Amended Complaint simply does not allege with sufficient particularity a plausible fact pattern that suggests otherwise. Therefore, it fails to meet the heightened pleading standard expected of securities fraud litigants and must be dismissed.

Gao's securities fraud claims are the sole independently sufficient basis for federal subject matter jurisdiction in this case. Because the "federal claims are eliminated in the early stages of litigation," this Court "decline[s] to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006); *see* 28 U.S.C. § 1367(c)(3) (providing that district courts may decline supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction"). Not only would dismissing Gao's federal law claims conserve "significant judicial resources," but refiling in state court would not implicate any "extraordinary inconvenience or inequity," particularly given that Gao's other claims have traditionally fallen within the ambit of state law. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006). For the same reason, Gao's associated state law claims do not implicate questions of federal policy and federal preemption doctrine. *See Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's federal claim under the Exchange Act (Count One) is dismissed with prejudice; Plaintiff's remaining state law claims are dismissed without prejudice and may be refiled in state court.

The Clerk of Court is directed to close the motion at Docket Number 21 and to close this case.

SO ORDERED.

Dated: June 17, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge